**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Behrooz K. BEHNEZHAD,
Defendant–Appellant.**

No. 89–10529.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1990.

Decided July 3, 1990.

Jon M. Sands, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Mark E. Aspey, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Ahmad Shayesteh (a.k.a. Behrooz Behnezhad) appeals the district court's order to revoke Shayesteh's supervised release. Shayesteh had violated a condition of his supervised release. The district court revoked Shayesteh's release and ordered him to return to prison for ten months and then to serve twenty-four months of supervised release. The court also ordered Shayesteh to pay restitution of $1500, to pay a fine of $2500, and to reimburse the government for the fees of Shayesteh's court-appointed attorney.

We reverse and remand.

## BACKGROUND FACTS

In August of 1988, Shayesteh pleaded guilty to two counts of mail fraud in violation of 18 U.S.C. § 1341. The mail fraud charges stemmed from Shayesteh's scheme to defraud a securities brokerage firm. Shayesteh was sentenced to twenty months in prison followed by thirty-six months of supervised release. Shayesteh was also ordered to make restitution to the securities brokerage firm in the amount of $17,213.12. Finally, the district court placed various conditions on Shayesteh's supervised release. One condition was that Shayesteh not trade or speculate on any securities during the term of his supervised release.

Shayesteh served his term in prison and began his term of supervised release. In August of 1989, the FBI was notified by a bank official in Phoenix, Arizona, that Shayesteh had opened a money market account at the official's bank and that Shayesteh had also engaged the services of the bank's securities broker. The FBI investigated the bank's information and determined that Shayesteh had been trading securities since June of 1989. Based on the FBI's investigation, the government requested that the court issue a warrant for Shayesteh's arrest and that the court order Shayesteh to show cause why his supervised release should not be revoked. Shayesteh was arrested and appeared before the district court on September 5, 1989. Shayesteh admitted that he had violated a condition of his supervised release when he had traded various securities. The court ordered that Shayesteh return to court on September 25, 1989, for a hearing on whether his supervised release should be revoked. At that hearing, the court learned for the first time that Shayesteh had a bank account which contained $15,000. Shayesteh indicated that the money belonged to his father. The government claimed that Shayesteh had obtained the money through his earlier securities fraud. The hearing was continued to October 2, 1989, so that the parties could gather more information about the $15,000 account.

On October 2, 1989, the government presented evidence that traced all of the deposits into the account back to earlier fraudulent securities transactions. The court ordered that Shayesteh's supervised release be revoked and that Shayesteh return to prison for ten months. The court also ordered Shayesteh to serve a twenty-four month term of supervised release after his ten month incarceration. Finally, the court ordered Shayesteh to pay restitution of $1500 to one of the banks that Shayesteh had used during his securities trading while on supervised release. The court also ordered Shayesteh to pay a fine of $2500 and to repay the government for the fees of the court-appointed attorney who represented him during the revocation hearings.

Shayesteh appeals the district court's order imposing the term of supervised release and the district court's order assessing a fine and attorney's fees. Shayesteh argues that the applicable statute prohibited the court from imposing both incarceration and a term of supervised release. Shayesteh also argues that the district court could not assess a fine or attorney's fees without a specific finding that Shayesteh had the financial resources to pay the fine and the fees.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review issues of law de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

### A. Modification and Revocation of Supervised Release.

Section 3583 of title 18 delineates the actions that a district court may take to modify or revoke a person's supervised release. 18 U.S.C. § 3583. The section states that a court may terminate supervised release after one year if the court is satisfied that the person no longer requires supervision. 18 U.S.C. § 3583(e)(1). The court may modify both the length and the terms of supervised release at any time before the term of supervised release has expired. 18 U.S.C. § 3583(e)(2). Finally, the court may revoke a person's supervised release and require the person to spend all or part of the release term in prison if the person has violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). Similarly, if a person has violated a condition of supervised release, the Sentencing Guidelines permit a court to either revoke supervised release or "extend the term of supervised release and/or modify the conditions...." U.S.S.G. § 7A1.3(b).

Shayesteh argues that because both section 3583 and Guidelines § 7A1.3 are written in the disjunctive, the district court was constrained to choose only one of the several alternatives. He asserts that the court could not choose part of one alternative and part of another alternative. The government counters that we should not read strictly the sections but should interpret them so that a district court is given the flexibility to tailor its punishment of a person who has violated supervised release.

■ Shayesteh raises an issue of first impression in this circuit. Furthermore, it appears that no other circuit has yet decided this issue. We are guided by this circuit's general rules of statutory construction. When we construe a statute, we first look to its language. If the language is unclear, then we may look to the legislative history of the statute. *Batista v. Sullivan*, 882 F.2d 1480, 1483 (9th Cir.1989); *Wang v. Immigration & Naturalization Serv.*, 622 F.2d 1341, 1347 n. 6 (9th Cir. 1980), *rev'd on other grounds*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981). Furthermore, we generally construe a statute written in the disjunctive as setting out separate and distinct alternatives. *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir.1975) ("[T]he use of a disjunctive in a statute indicates alternatives and requires that they be treated separately."); *accord Batista*, 882 F.2d at 1483; *Wang*, 622 F.2d at 1347 n. 6. As the Tenth Circuit has noted, any ambiguity about a disjunctive phrase in a criminal statute usually requires a court to strictly interpret "or" as disjunctive because to do otherwise would generally have the effect of increasing a person's punishment. *United States v. O'Driscoll*, 761 F.2d 589, 598 (10th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).

■ Given the above rules of statutory construction, we interpret both section 3583 and Guidelines § 7A1.3 as setting out distinct alternatives from which a district court can choose. If a district court finds that a person has violated a condition of supervised release, then the court may either revoke the term of supervised release and incarcerate the person [18 U.S.C. § 3583(e)(3)], or the court may take the actions specified in section 3583(e)(2). However, a district court is not permitted to revoke a person's supervised release, order a term of incarceration *and* then order another term of supervised release.[1]

Furthermore, we have reviewed the legislative history of section 3583. We do not find anything in that history to contradict our interpretation. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 122, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3305–08.

---

1. The Third Circuit has hinted that it would similarly interpret section 3583. *See United States v. Gozlon–Peretz*, 894 F.2d 1402, 1405 n. 5 (3d Cir.1990). When comparing special parole terms to supervised release, the court noted that "after revocation of a supervised release term, there is no provision for additional post-release supervision." *Id.*

The report notes only that a court will have some ability to modify the terms of supervised release.[2] In other words, there is nothing that would suggest that we should give the word "or" anything but its natural meaning.

The government argues that it would be logical for a court to be able to revoke a term of supervised release, impose a term of incarceration and then impose another term of supervised release. The government is correct since it is rational to believe that a person who has violated a condition of supervised release may only need a short reminder that incarceration is unpleasant but may still need supervised release in order to refrain from further criminal activities. However, Congress has enacted an unambiguous statute that does not provide courts with that option. We would exceed our authority were we to judicially rewrite that legislation.

Had Congress wished to give a district court more discretion when revoking supervised release, it could have said so in section 3583. That point is highlighted by the fact that Congress did provide courts with greater flexibility to create terms of punishment for violations of probation. 18 U.S.C. § 3565. Under section 3565, a court may revoke a sentence of probation if it finds that a person has violated the conditions of probation. The court may then impose "any other sentence that was available ... at the time of the initial sentencing." 18 U.S.C. § 3565(a)(2). Therefore, when a court revokes probation, it has the flexibility to structure a new sentence that may include probation, incarceration, fines and supervised release. Section 3565 shows that Congress knew how to give a court flexibility when Congress intended that a court have flexibility.

### B. Fines, Restitution and Attorney's Fees.

■ As demonstrated above, section 3583 and Guidelines § 7A1.3 delineate all of the alternatives a court has when a person violates a condition of his supervised release. None of those alternatives includes restitution or a fine. A district court is permitted to impose restitution or a fine at the time a defendant is sentenced. *See* 18 U.S.C. § 3556 (restitution) and 18 U.S.C. § 3572 (fines). However, the revocation of supervised release is not the same thing as a sentencing for a conviction. The government did not charge Shayesteh with any new crime but arrested him for violating a condition of his supervised release. There is no statute that authorizes a court to impose restitution or a fine in order to punish a person for violating a condition of supervised release. *Compare* 18 U.S.C. § 3565 (when probation revoked a court may impose fine and restitution as long as those options were available at time of original sentencing).

However, the district court did have authority to order Shayesteh to pay for his court-appointed attorney. 18 U.S.C. § 3006A(f). Section 3006A sets out the requirements for appointing counsel in proceedings regarding violations of supervised release. 18 U.S.C. § 3006A(a)(1)(E). The section also permits a court to order a defendant to repay the government for appointed counsel. Before the court orders repayment, it must "find[ ] that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f); *see also United States v. Seminole*, 882 F.2d 441, 443 (9th Cir. 1989) (district court must make finding that funds are available).

Shayesteh argues that a court must make an explicit finding on the record that a defendant has funds available that he could use to pay for a court-appointed attorney. The Second Circuit follows such an approach. *United States v. Bracewell*, 569 F.2d 1194, 1197 (2d Cir.1978) ("district court is obliged ... to make a finding on the record" that funds are available). On the other hand, the Seventh Circuit has stated that it will uphold a repayment order under section 3006A when a district court

---

**2.** Initially section 3583 did not include the alternative of revocation. Congress added the revocation section in 1986. *See* Anti–Drug Abuse

Act of 1986, Pub.L. No. 99–570, § 1006, 100 Stat. 3207, 3207–6 to 3207–7 (1986).

has not made a specific finding of available funds if there is sufficient evidence to support the court's decision and the defendant did not object to that evidence. *United States v. Gurtunca*, 836 F.2d 283, 288 (7th Cir.1987).

We are persuaded by the Seventh Circuit's approach, especially since the facts in *Gurtunca* are very similar to the facts in this case. In *Gurtunca*, the defendant's presentence report detailed the defendant's financial resources. Gurtunca did not object to any information in the presentence report nor did he attempt to qualify or explain the information. The court found that the circumstances did not require it to vacate the order to pay attorney's fees. 836 F.2d at 288.

Here, Shayesteh initially indicated that a $15,000 bank account belonged to his father. However, the government then prepared a report that traced all of the deposits to the account and showed that the source of the deposits were from Shayesteh's earlier securities fraud. Shayesteh did not object to the government's report nor did he attempt to explain or qualify the government's findings. Therefore, we will not set aside the district court's order to pay attorney's fees even though the court neglected to make a specific finding of fact on the record.

## CONCLUSION

We hold that a district court has limited discretion when it seeks to modify the terms of a person's supervised release. Section 3583(e) sets out the district court's three options: (1) terminate supervised release if the person no longer needs supervision, (2) either modify the length or the conditions of supervised release or both, or (3) revoke supervised release and reincarcerate the person. A district court must choose between the three options. It cannot create its own remedy. Since there would be great virtue and much benefit to all concerned if courts were given more flexibility in this area, we embrace this result with velleity. Nevertheless, embrace it we must for Congress has spoken. Therefore, we REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.