UNITED STATES of America, Appellee,

v.

Joseph R. MALESIC, Appellant.

No. 93–3393.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Feb. 17, 1994.

Decided March 7, 1994.

Frederick W. Thieman, United States Attorney, Paul J. Brysh, Chief Counsel, Michael L. Ivory, Asst. U.S. Atty., Pittsburgh, PA, for appellee.

Thomas S. White, W. Penn Hackney, First Asst., Karen Sirianni Gerlach, Asst. Federal Public Defenders, Pittsburgh, PA, for appellant.

Before: BECKER, HUTCHINSON, and COWEN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

### I.

On June 18, 1991, appellant Joseph R. Malesic, having been convicted of mail fraud, was sentenced to a term of imprisonment of 18 months to be followed by a three-year term of supervised release ("SR"). On direct appeal we affirmed the conviction. After appellant's release from prison and following an initial hearing on appellant's subsequent violation of the conditions of his SR, the district court augmented the SR to include nine months' home confinement with electronic monitoring. At a subsequent hearing regarding a separate violation of his SR, the district court again determined that appellant had violated his SR and this time revoked it. The court thereupon not only sentenced appellant to a term of imprisonment for a period of nine months, but also ordered appellant thereafter "to recommence supervised release so as to complete a total supervised release period of three years." This appeal followed.

The appeal presents the question, over which the courts of appeals are divided, whether the supervised release revocation provision of the Sentencing Reform Act ("SRA"), 18 U.S.C. § 3583(e)(3) (1988 & Supp. IV), permits a sentencing court to impose on a person who has violated the conditions of his or her SR both a prison sentence and a new SR term to follow the period of incarceration. Eight courts of appeals, all acknowledging that it would be better policy to permit sentencing courts to do this, have nonetheless read the statute to foreclose the reimposition of a SR term following revocation and reimprisonment, concluding that to hold to the contrary would require them to "rewrite" the statute. *See United States v. Truss,* 4 F.3d 437, 439 (6th Cir.1993); *United States v. Tatum,* 998 F.2d 893, 895–96 (11th Cir.1993); *United States v. Rockwell,* 984 F.2d 1112, 1116–17 (10th Cir.),

*cert. denied*, —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); *United States v. McGee*, 981 F.2d 271, 274–76 (7th Cir.1992); *United States v. Koehler*, 973 F.2d 132, 134–36 (2d Cir.1992); *United States v. Cooper*, 962 F.2d 339, 341–42 (4th Cir.1992); *United States v. Holmes*, 954 F.2d 270, 272–73 (5th Cir.1992); *United States v. Behnezhad*, 907 F.2d 896, 898–99 (9th Cir.1990).[1] Two courts of appeals have held to the contrary, i.e., that the statute permits a sentencing court to impose a new SR term after its revocation of SR and imposition of a sentence of incarceration. *See United States v. O'Neil*, 11 F.3d 292 (1st Cir.1993); *United States v. Schrader*, 973 F.2d 623, 625 (8th Cir.1992); *cf. United States v. Williams*, 2 F.3d 363, 364–65 (11th Cir.1993) (following *Tatum* but expressing unanimous disagreement with its holding); *United States v. Boling*, 947 F.2d 1461, 1464 (10th Cir.1991) (adopting the minority position; later reversed by *Rockwell, supra*).

The opinions in these cases have elucidated all the arguments pro and con on the issue, so that we would add nothing to the jurisprudence by a further exegesis. Moreover, the conflict will doubtless be settled not by the courts but by the Congress: the Sentencing Commission has urged the Congress to amend the SRA so as clearly to grant sentencing judges the power the majority courts wish they had and the minority courts have found them to have already.[2] For the reasons briefly set forth herein, we cast our lot with the majority and, as the district court followed the minority rule, we will vacate the judgment of sentence it entered.

## II.

Congress enacted the provision authorizing SRs as part of the Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1987 (1984)

(codified as amended at 18 U.S.C. §§ 3551–86 (1988 & Supp. IV) and 28 U.S.C. §§ 991–98 (1988 & Supp. IV)). That provision, codified at 18 U.S.C. § 3583, authorizes a court to alter SR terms in a variety of ways. In particular, a court may:

> (1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release ...;
>
> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release ...;
>
> (3) *revoke a term of supervised release,* and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on post-release supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release ...; *or*
>
> (4) order the person to remain at his place of residence during nonworking hours....

18 U.S.C. § 3583(e) (1988 & Supp. IV) (emphasis supplied).

The present controversy centers on the third of these four options. We agree with the reasoning of the Fifth Circuit Court of Appeals, which stated in *Holmes:*

> "Revoke" generally means to cancel or rescind. Once a term of supervised release has been revoked under § 3583(e)(3), there is nothing left to extend, modify, reduce, or enlarge under § 3583(e)(2). The term of release no longer exists. Thus regardless of whether the options available under § 3583(e) could otherwise be used together, or in succession, the revocation and

---

**1.** Though we have not decided the question, our dictum in *United States v. Gozlon–Peretz*, 894 F.2d 1402, 1405 n. 5, *amended*, 910 F.2d 1152 (3d Cir.1990), *aff'd*, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991), endorses what has become the majority position. Indeed, *Behnezhad*, the first of the majority cases, cites *Gozlon–Peretz* for support. *See* 907 F.2d at 898 n. 1.

**2.** *See* Letter from Honorable William W. Wilkins, Jr., Chairman, United States Sentencing Commission, to Honorable Charles E. Schumer, Chairman, Subcommittee on Crime and Crimi-

nal Justice of the House of Representatives Judiciary Committee (June 5, 1992) (advocating that Congress pass a bill which "authorizes the court to order an additional, limited period of supervision following revocation of supervised release and imprisonment"); *see also, e.g.,* H.R. 6201, 102d Cong., 2d Sess. § 804(2)(B) (1992) (The Biden–Thurmond Justice Improvements Act) (proposing to enable sentencing courts to impose a new SR after revocation of a SR pursuant to § 3583(e)(3)); S. 3349, 102d Cong., 2d Sess. § 804(2)(B) (1992) (same).

extension options are by their very nature mutually exclusive.

954 F.2d at 272. The Second, Sixth, and Seventh Circuit Courts of Appeals have all joined this "revocation camp." *See Truss,* 4 F.3d at 441; *McGee,* 981 F.2d at 274–75; *Koehler,* 973 F.2d at 134–35.

The Ninth Circuit Court of Appeals, the first court to reach the result of the majority, employed a different rationale. It noted that Congress' utilization of the word "or," which separates the third and fourth subsections of § 3583, means that the statute sets forth the district court's options in the disjunctive. *See Behnezhad,* 907 F.2d at 898 ("[W]e generally construe a statute written in the disjunctive as setting out separate and distinct alternatives."). Under this analysis, the court concluded that an additional SR term is prohibited because it involves choosing part of one option—revocation and imprisonment, § 3583(e)(3)—and part of another option—extension of the SR, § 3583(e)(2). The remaining members of the majority camp—the Fourth, Tenth, and Eleventh Circuit Courts of Appeals—have adopted the majority rule without embracing either of the two specific rationales, apparently finding both convincing. *See Tatum,* 998 F.2d at 895; *Rockwell,* 984 F.2d at 1117 n. 8; *Cooper,* 962 F.2d at 341–42.

We have carefully considered Judge Selya's thoughtful opinion in *O'Neil, supra,* but have not been convinced by the reasons he offers in support of the minority view. First, we are unpersuaded by his construction of "revoke" as meaning merely "to recall" in a way that a SR could then be reimposed. *See* 11 F.3d at 295–96; *accord Williams,* 2 F.3d at 365. In our view this definition of revoke is strained and not faithful to ordinary legal usage.

We also acknowledge the rhetorical force of Judge Selya's "greater includes the lesser" argument[3]—that is, that the greater power of the court to sentence a defendant who has violated his or her SR to prison for the remainder of the SR term of necessity en-

compasses the lesser power to send the defendant to prison for only part of it and to reimpose a new SR term for the remainder of its original duration. *See id.* at 296–98. But that argument founders because supervised release is entirely a creature of statute, and the complete and integrated statute we are construing simply does not provide courts with that option.

Finally, we take note of Judge Selya's invocation of "the historical development of non-detentive monitoring," which "reinforce[d] [the panel's] intuition that Congress meant to leave undisturbed the widely accepted pre-guidelines practice of allowing district courts discretion to order a period of non-detentive monitoring as a part of the sentence imposed for violation of supervised release conditions." *Id.* at 300. We draw no such instruction, as the SRA represents a sharp and considered break with the past, rejecting the "medical model" of penology. This is also true with respect to post-incarceration remedies. Under the SRA, probation, for example, has become an entirely new species of animal—a sentence in and of itself. *Compare* 18 U.S.C. § 3561 (1988) (providing that a defendant "may be *sentenced* to a term of probation" (emphasis added)) *with* 18 U.S.C. § 3651 (1982) (repealed) (granting the sentencing court the power to "*suspend* the imposition or execution of *sentence* and place the defendant on probation" (emphasis added)). Moreover, a court's imposition of a sentence of imprisonment for the violation of a condition of a SR (which itself is a novel addition to the available punishment options) now gives rise to a *new* sentence, not a reprise of the original sentence as under the former probationary regime. *Compare* 18 U.S.C. § 3583(e)(3) (1988 Supp. IV) (empowering the court to "revoke a form of supervised release, and require the person to serve in prison all or part of the term of supervised release") *with* 18 U.S.C. § 3653 (1982) (repealed) (providing that a court may "revoke the probation and requiring [the probationer] to serve the sentence imposed, or any lesser sentence, and, if

---

3. Judge Selya's opinion builds on the rationale in *Schrader,* 973 F.2d at 624–25, in which Judge Heaney reasoned that "[i]f a district court has [the power to require the offender to serve in prison all or part of the SR without credit for time previously served], it certainly has the pow-

er under that subsection to impose a less drastic sanction, namely, to require an offender to serve part of the remaining supervised release period in prison and the other part under supervised release."

imposition of sentence was suspended, may impose any sentence which might originally have been imposed"). Hence, when a defendant who violates his or her SR is sentenced to jail for that violation, given the conspicuous absence of a statutory provision clearly permitting a court to do so, there appears to be no warrant for the imposition of an additional SR term.

We appeal to the Congress to enact the legislation proposed by the Sentencing Commission. It represents sound policy. We cannot, however, breathe premature life into proposed legislation.[4] We will therefore vacate the judgment of the district court, and remand the case to that court with instructions to resentence the defendant.

---

**4.** In the absence of congressional action, the Supreme Court might wish to consider resolving the circuit conflict. We believe the problem of a circuit split in this case is particularly troublesome because releasees often move to different circuits. Supervision by the judiciary is frequently transferred from one district to another, *see* 18 U.S.C. § 3605, and the transferee district may be in a circuit with a different rule. It is not at all clear what rule would apply to the releasee who violates the terms of the SR in a circuit with a rule different from the one applied by the circuit in which he or she was originally sentenced. At the very least such a choice of law type problem would lead to increased litigation; and it could create a situation in which similarly situated releasees would be treated differently. *See Gozlon–Peretz,* 894 F.2d at 1405–6 & n. 6.