

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-4-1996

# Fowler v. US Parole Comm

Precedential or Non-Precedential:

Docket 95-5226

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Fowler v. US Parole Comm" (1996). *1996 Decisions.* Paper 66.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/66

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5226



KEVIN FOWLER,

Appellant

v.

UNITED STATES PAROLE COMMISSION,

Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 95-cv-00754)



Argued:  February 8, 1996
Before:  BECKER, ROTH and McKEE, Circuit Judges
(Filed  September 4, 1996)

KENNETH M. TUCCILLO (ARGUED)
22 South Holmdel Road
Holmdel, NJ 07733

Counsel for Appellant
Kevin Fowler

FAITH S. HOCHBERG
United States Attorney

JAMES B. CLARK, III (ARGUED)
Assistant U.S. Attorney
Clarkson S. Fisher Courthouse
402 E. State Street, Room 502
Trenton, NJ 08608

MICHAEL A. STOVER (ARGUED)
General Counsel

United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, MD 20815

Counsel for Appellee
United States Parole Commission

OPINION OF THE COURT

McKEE, Circuit Judge

Defendant-appellant Kevin Fowler appeals from an order of the United States District Court for the District of New Jersey denying his petition for habeas corpus relief under 28 U.S.C. 2255. We are asked to determine if the United States Parole Commission has the authority to impose a new term of special parole under 21 U.S.C. 841(c) following revocation of his original special parole term. We conclude that the Parole Commission does maintain jurisdiction over Fowler under 841(c), but that the non-incarcerative sanction that it can impose is not special parole, but traditional parole. To the extent that the Parole Commission's regulations at 28 C.F.R. 2.52(b) and 2.57(c) allow a contrary result, we hold that they are inconsistent with 841(c). Accordingly, we will vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

The facts of this case are not in dispute. On April 21, 1986, defendant-appellant Kevin Fowler was sentenced by the United States District Court for the Southern District of New York to a two-year term of imprisonment for distributing narcotics within 1000 feet of a school. The two-year sentence was to be followed by a six-year term of special parole pursuant to 21 U.S.C. 841(c). Fowler was subsequently released from incarceration and began serving his special parole term on May 19, 1990.

On April 23, 1992, the Parole Commission revoked Fowler's special parole based upon his use of drugs, failure to report to his probation officer, and violation of a special drug aftercare condition. The Commission ordered that he receive no credit for time spent on special parole, and that he serve twelve months prior to reparole. The Commission later rescinded this requirement, and instead required service of an additional three months because appellant had escaped from a halfway house.

Fowler was once again released from incarceration and placed on special parole on February 17, 1993. He was to remain under supervision until November 3, 1997. However, on November 16, 1993, the Commission again revoked Fowler's special parole because of

continuing drug use, another violation of the drug aftercare condition, and criminal possession of a controlled substance. The Commission ordered that Fowler receive no credit for any of the time he had spent on special parole and that he be reparoled after serving thirty-two months in prison. The decision was affirmed by the National Appeals Board.

On November 2, 1994, Fowler filed a petition for a writ of habeas corpus in the District of New Jersey. He argued that the Parole Commission had no statutory authority under 21 U.S.C. 841(c) to impose a second or third term of special parole after it had revoked the initial term in April 1992. Appellant's Brief at 4. On March 17, 1995, the district court ruled that the Commission retained jurisdiction over Fowler after its initial revocation of special parole, and denied Fowler's petition. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C.   2255 and 1291. Our standard of review is de novo. See e.g., United States v. Cleary, 46 F.3d 307, 309-10 (3d Cir. 1995) ("The decision whether to grant or deny a habeas corpus petition is reviewed de novo.").

                              II.
21 U.S.C.   841(c) provides:
   A special parole term . . . may be revoked if
   its terms and conditions are violated. In such
   circumstances the original term of imprisonment
   shall be increased by the period of the special
   parole term and the resulting new term of
   imprisonment shall not be diminished by the time
   which was spent on special parole.  A person whose
   special parole term has been revoked may be
   required to serve all or part of the remainder of
   the new term of imprisonment.  A special parole
   term provided for in this section shall be in
   addition to, and not in lieu of, any other parole
   provided for by law.

21 U.S.C.   841(c) (repealed).

The Courts of Appeals that have interpreted this statute have disagreed about its meaning. In Evans v. United States Parole Commission, 78 F.3d 262 (7th Cir. 1996) and Artuso v. Hall, 74 F.3d 68 (5th Cir. 1996), the Courts of Appeals for the Seventh and Fifth Circuits concluded that the Parole Commission has no authority to reimpose special parole after revoking a parolee's initial term. In United States Parole Commission v. Williams, 54 F.3d 820 (D.C. Cir. 1995) and Billis v. United States, 83 F.3d 209 (8th Cir. 1996), the Courts of Appeals for the District of Columbia and the Eighth Circuits reached the opposite conclusion. For the reasons set forth below, we agree with, and are guided by the reasoning of Evans. We need not reiterate at length why the analysis in Williams and its progeny is flawed. Rather, we find the analysis in Evans, and its criticism of Williams, to be persuasive. See Evans, 78 F.3d at 265-66.

In concluding that successive terms of special parole would be impermissible under   841(c), Evans and Artuso rely persuasively on

a line of cases interpreting a similar provision governing supervised release, 18 U.S.C.  3583(e)(3).  See Evans, 78 F.3d at 264; Artuso, 74 F.3d at 71.

Subsection 3583(e)(3) authorized a court to "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . . without credit for time previously served on postrelease supervision." 18 U.S.C. 3583(e)(3) (1988 & Supp. IV).  In United States v. Holmes, 954 F.2d 270, 272 (5th Cir. 1992), the Fifth Circuit reasoned that the word "revoke" in  3583 meant to "cancel or rescind," and therefore provided courts with no authority to impose a second period of supervised release after revoking the first term.  In United States v. Malesic, 18 F.3d 205, 206–207 (3d Cir. 1994), we agreed with the reasoning set forth in Holmes.  In Malesic, this Court stated that "revoke generally means to . . . rescind."  Malesic, 18 F.3d at 206 (citing, Holmes, 954 F.2d at 272).  Once a term of supervised release has been "revoked" under 18 U.S.C.  3583(e)(3), we concluded that an additional term could not be imposed "given the conspicuous absence of a statutory provision clearly permitting a court to do so."  Id. at 208.  Several other Courts of Appeals similarly interpreted the language of section 3583(e)(3), and reached the same conclusion as to its effect.  See United States v. Koehler, 973 F.2d 132 (2d Cir. 1992); United States v. Cooper, 962 F.2d 339 (4th Cir. 1992); United States v. Truss, 4 F.3d 437 (6th Cir. 1993); United States v. McGee, 981 F.2d 271 (7th Cir. 1992); United States v. Behnezhad, 907 F.2d 896 (9th Cir. 1990); United States v. Rockwell, 984 F.2d 1112 (10th Cir.), cert. denied __ U.S. __, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); United States v. Tatum, 998 F.2d 893 (11th Cir. 1993); but see United States v. O'Neil, 11 F.3d 292 (1st Cir. 1993); United States v. Schrader, 973 F.2d 623 (8th Cir. 1992).

Although the Court of Appeals for the Ninth Circuit did not explicitly rely on the word "revoke" in its analysis of 3583(e)(3), the Behnezhad court employed essentially the same reasoning as Holmes and Malesic.  The Ninth Circuit Court of Appeals reasoned as follows:

> The government argues that it would be logical for a court to be able to revoke a term of supervised release, impose a term of incarceration and then impose another term of supervised release. . . . However, Congress has enacted an unambiguous statute that does not provide courts with that option.  We would exceed our authority were we to judicially rewrite that legislation.

Behnezhad, 907 F.2d at 899.  We believe the language of 21 U.S.C.  841(c) requires a similar result.

In the instant dispute, both Fowler and the Parole Commission assume that our inquiry is bipolar.  That is to say, they suggest that if 21 U.S.C.  841(c) does not authorize the imposition of a new term of special parole, the Commission loses jurisdiction over the parolee when the original term of special parole is revoked. However, we do not believe that our analysis is so constrained.

The interpretation of any statute obviously begins with an

analysis of the text itself. Kelly v. Robinson, 479 U.S. 36, 43 (1986) ("The starting point in every case involving construction of a statute is the language itself.").  Thus, when Fowler's original term of special parole was revoked, the statute dictated that the

> original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. . . . A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

21 U.S.C.  841(c).  Upon revocation, Congress has specifically required a "new" term of imprisonment equal to the full term of special parole.  However, after resentencing, Congress has expressly granted the Parole Commission authority to release a special parole violator.  The statute plainly states that a violator such as Fowler "may be required to serve all or part of . . . the new term of imprisonment."  Id.  Consequently, if a sentencing court imposes a three year term of imprisonment, the Commission may require that only two be spent in prison.  The Commission obviously does not lose control or jurisdiction over the offender after the two years served behind bars.

In Williams, the D.C. Circuit reasoned that  841(c) "mandates a new prison term equal to the term of special parole . . . the only open issue is whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and special parole."  Williams, 54 F.3d at 824.  As the Seventh Circuit observed in Evans, we believe that Williams advances a "false dichotomy."  Evans, 78 F.3d at 265.  Upon revocation,  841(c) clearly provides for the re-release of a special parole violator and permits him or her to serve a sentence of imprisonment on the street.  The only unresolved question, in our estimation, is the nature of that release.  In answering that question, it is helpful to consider the development of parole and the differences between the parole that has been traditionally used as a sanction, and the special parole that is involved in this appeal.

The first use of traditional parole in the United States came in 1876 with the opening of the New York State Reformatory for Juveniles in Elmira.  See Neil P. Cohen & James J. Gobert, The Law of Probation and Parole,  1.05 (1983 & Supp. 1993).  The founders of Elmira adopted a system of indeterminate sentences which, as its final stage, provided for the conditional supervised release of inmates.  Id.  Since that time, the practice of releasing prisoners, on the condition that they abide by certain rules during the balance of their sentences, "has become an integral part of the penological system."  Morrissey v. Brewer, 408 U.S. 471, 477 (1972).  While on traditional parole, the "prisoner" is deemed to be continuing to serve the original sentence imposed by the trial court and remains in legal custody until that sentence expires even though the offender is "at liberty" and not incarcerated behind

bars.  If the parolee violates a condition of release, he or she may be returned to prison for the unexpired term of imprisonment.  In such a case, the "unexpired" term would be the original term of imprisonment reduced by time served and the time the defendant spent on the street before the violation.  The credit for "street time" is the natural consequence of the concept that a parolee serves his or her time "on the street."  See Evans, 78 F.3d at 263.  Thus, traditional parole is merely "a conditional release from incarceration . . . prior to the expiration of the full term set by the sentencing court."  Parry v. Rosemeyer, 64 F.3d 110, 116 n.10 (3d Cir. 1995) (citing Roberts v. United States, 491 F.2d 1236, 1238 (3d Cir. 1974)).  It is a part of a sentence of imprisonment, and has historically been a mechanism whereby one could be released yet continue to serve the sentence -- so long as the parolee complied with those rules of society that were a condition of parole.  See Morrissey, 408 U.S. at 477.

In stark contrast, special parole is a statutory creation imposed in addition to any term of years.  It is applied to offenders by a sentencing court only pursuant to a specific grant of authority from Congress.  See Parry, 64 F.3d at 116-117; Roberts, 491 F.2d at 1237-1238.  As the court noted in Evans:

> Three things are 'special' about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second special parole was imposed and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words 'street time' does not count toward completion of special parole . . . .  This third difference is a consequence of 21 U.S.C. (1982 ed.) 841(c) . . . .

78 F.3d at 263.  See also Bell v. United States, 521 F.2d 713, 715 (4th Cir. 1975) ("The mandatory special parole term imposed by the 1970 Act is unique.  It is in addition to any other parole, remaining in effect after the original prison sentence has been served and the period of regular parole has expired . . . .  Since the statute prescribes no maximum special parole term, the additional prison sentence may be lengthy.")

Just as 18 U.S.C.  3583(e)(3) did not provide for the imposition of a post-revocation term of supervised release, section 841(c) does not provide for a new term of special parole following revocation. Rather, the non-incarcerative custody authorized by 841(c) is part of the sentence of imprisonment mandated upon the revocation of special parole; it is not in addition to it.  Thus, it is traditional parole.  Nowhere in  841(c) has Congress vested a district judge or the Parole Commission with the authority to reimpose a special parole term.

The Parole Commission downplays this clear absence of statutory authorization by arguing that "it has always been understood [under pre-Guidelines law] . . . that somebody who has

had their special parole revoked, could be placed on another term of special parole." (Tr. at 21-22). In support of this proposition, the government directs this Court to language in United States v. Gozlon-Peretz, 894 F.2d at 1402, 1405 n.5 (3d Cir. 1990), aff'd, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) and Williams. In Gozlon-Peretz, we stated, in dicta, that "upon revocation of special parole, an individual may be re-paroled." Id. at 1405, n.5. Similarly, in Williams, the court referred to

> the common pre-Sentencing Guidelines
> understanding . . . that parole violators
> could be reparoled pursuant to 841(c). This
> much followed from the established pre-
> Guidelines sentencing principle that 'parole
> is available unless expressly precluded.'
> (quoting United States v. Mudd, 817 F.2d 840,
> 843 (D.C. Cir. 1987))

54 F.3d at 825. We agree. However, the issue is not the availability of parole under 841(c), but the nature of the parole that is specifically contemplated by that statute.

Far from endorsing the reimposition of special parole, the statements from Gozlon-Peretz and Williams confirm our present understanding, that the parole that is imposed after special parole is revoked can only be traditional parole. As we stated above, 841(c) leaves no doubt that special parole violators are eligible for some period of release on their new term of imprisonment. In the absence of statutory authority, however, 841(c) provides no basis for characterizing that period of release as special parole. To the contrary, because the statute allows violators to serve at least a portion of their time on the street, such release is identical to traditional parole. Consequently, despite its asserted prevalence, any pre-guidelines approach condoning the post-revocation imposition of special parole, is without foundation in the controlling statute. Although general acceptance of a practice must be considered in any reasoned analysis, a practice bottomed upon an erroneous interpretation of the law is not legitimized merely by repetition.

The Parole Commission further argues that its regulations are entitled to deference, and that those regulations authorize a new term of special parole following revocation of the initial term. 28 C.F.R. 2.57(c) provides, in part:

> Should a parolee violate conditions of release during the
> Special Parole Term he will be subject to revocation on the
> Special Parole Term . . . and subject to reparole or
> mandatory release under the Special Parole Term.

28 C.F.R. 2.52(b) states:

> If parole is revoked . . . the Commission shall also
> determine . . . whether reparole is warranted or whether
> the prisoner should be continued for further review.

The Parole Commission promulgated these regulations pursuant to a specific grant of statutory authority. We are, of course, mindful of the deference that is due the Parole Commission's

interpretation of  841(c) and the regulations it has promulgated pursuant to 18 U.S.C.  4203.  See Chevron v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984).  We owe no deference, however, to administrative interpretations or regulations that are based upon an impermissible construction of the statute.  Id.; see also, Sekula v. FDIC, 39 F.3d 448, 452 (3d Cir. 1994).  Indeed, such a regulation or interpretation is invalid.

Section 841(c) is not so ambiguous as to allow the interpretation urged upon us by the Government.  See BATF v. FLRA, 464 U.S. 89, 97 (1983) ("[Deference] cannot be allowed to slip into a judicial inertia . . .").  No statutory authority exists for a second term of special parole after the initial term has been revoked.  Rather, Congress has merely authorized a new term of imprisonment which can include noncustodial supervision.  Therefore, early release from that term of incarceration is parole as that sanction has traditionally been used in criminal law.  Moreover, in merely authorizing "reparole", the Commission's regulations are not to the contrary.  Those regulations do not suggest that any new term of parole should be characterized as special parole rather than traditional parole.  To the extent that the Parole Commission's regulations at 28 C.F.R.   2.52(b) and 2.57(c) are interpreted to authorize the reimposition of special parole, they are in conflict with  841(c).  Where such a conflict exists "the regulations must, of course, give way."  McComb v. Wambaugh, 934 F.2d 474, 481 (3d Cir. 1991).

Finally, we note that Congress has amended the supervised release statute to grant sentencing courts explicit authority to impose post-revocation terms of supervised release.  See 18 U.S.C.   3583(h) (1994).  The Parole Commission suggests that  3583(h) must also reflect congressional intent with respect to the operation of special parole.  However, we must presume that "a legislature says in a statute what it means and means . . . what it says."  Connecticut Nat'l Bank v. Germain, 503 U.S. 1146, 1149 (1992).  Since section 841(c) provides no basis for reimposing special parole, we will not rely upon the amendment of  3583 to force a construction on section 841(c) that is contrary to the plain language of the statute.

III.

For the foregoing reasons, we will vacate the judgment of the district court and remand the case to the district court with instructions to grant a conditional writ of habeas corpus.  The district court will then remand to the Parole Commission for further proceedings consistent with this opinion.  If the Parole Commission determines that Fowler's maximum period of supervision (with credit for any street time he may have earned following revocation of his term of special parole) has not expired, the Commission may determine if it wishes to impose any additional term of traditional parole.  In the event that the Commission determines that Fowler's maximum period of supervision has expired, or that it does not wish to impose any further traditional parole, Fowler must be released from custody.