**Charles Allen ARMSTRONG, a/k/a Malik Allen–Bey, Petitioner,**

v.

**The UNITED STATES PAROLE COMMISSION, Respondent.**

**No. C96–1340D.**

United States District Court,
W.D. Washington,
at Seattle.

Dec. 3, 1996.

Peter K. Mair, Seattle, WA, for petitioner.

Harold Malkin, U.S. Attorney's Office, Seattle, WA, for respondent.

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR WRIT OF HABEAS CORPUS**

DIMMICK, Chief Judge.

THIS MATTER comes before the Court on Charles Allen Armstrong's petition for a writ of habeas corpus. Having reviewed the petition, the opposition from the United States Parole Commission (USPC), Petitioner's response, and all supporting memoranda, the Court hereby grants the petition insofar as Petitioner seeks to be released from the conditions of special parole but denies the petition insofar as Petitioner seeks to be released from the jurisdiction of the USPC altogether.

**I.**

This petition presents an issue of first impression in the Ninth Circuit, and the courts of appeals for other circuits have reached conflicting conclusions on the issue. The question presented is whether a statute providing that "[a] special parole term ... may be revoked if its terms and conditions are violated" and that, if the term is revoked, "the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole" and further providing that "[a] person whose special parole term is revoked may be required to serve all or part of the remainder of the new term of imprisonment" grants the United States Parole Commission authority to re-release a person under the conditions of spe-

---

cial parole—as opposed to regular parole—when it revokes a person's special parole term but requires the person to serve only part of the resulting new term of imprisonment. The Court finds that the statute does not grant such authority.

## II.

The facts are not in dispute. On November 19, 1979, the District Court for the Middle District of Tennessee sentenced Petitioner to a prison term of fifteen years, followed by a special parole term of three years, for distributing heroin. The USPC released Petitioner on parole on August 14, 1984.

A failed urine test indicating marijuana use led to Petitioner's arrest on November 8, 1988. On January 17, 1989, the USPC revoked Petitioner's parole and ordered him to serve twelve months in prison, starting from the time of his arrest the previous November. The USPC subsequently extended the term by five months due to another failed urine test, and Petitioner was re-paroled on April 9, 1990.

Petitioner was incarcerated a third time on July 25, 1991, and the USPC again revoked his parole and ordered him to serve fourteen months from the time of his arrest in July—this time for failure to meet certain reporting requirements in addition to drug use. The USPC re-paroled Petitioner for the third time on September 25, 1992.

Petitioner was then incarcerated for a fourth time in March of 1993; on May 21, 1993, the USPC revoked his parole for a fourth time, again for drug use. On May 4, 1994, the USPC released Petitioner for the fourth time. On July 4, 1994, Petitioner's fifteen-year sentence ended.[1] Petitioner's special parole term was scheduled to end on July 3, 1997.

On February 16, 1995, Petitioner's probation officer requested yet another warrant for Petitioner's arrest, which the USPC granted on February 24, 1995. After re-incarcerating Petitioner in March, the USPC revoked Petitioner's special parole on May 24, 1995. Pursuant to statute, Petitioner's three-year special parole term was converted into a three-year prison term, and none of the time that Petitioner had spent on special parole from the date of his release on July 4, 1994, to the date of his re-incarceration on March 8, 1995, was credited towards his three-year special parole term. Twelve months after his re-incarceration, the USPC re-released Petitioner on special parole for a term to last until March 7, 1998, which reflects the original three years minus the twelve months that Petitioner spent re-incarcerated and without credit for the "street time" between July 4, 1994, and March 8, 1995. Petitioner remains out on special parole.

Petitioner argues that the statute authorizing his special parole does not authorize the USPC to revoke his special parole term and impose an additional special parole term upon re-release. The Court agrees.

## III.

To frame the question presented, some legal contextual background is necessary. Federal law currently allows a district court to modify or revoke a person's "supervised release" in the following ways: The court may (1) terminate supervised release after one year, (2) extend the term of release or modify its conditions, (3) or revoke a term of release and require a person to spend all or part of the remainder of the term in prison or (4) confined to his home. 18 U.S.C. § 3583(e). The Ninth Circuit has interpreted this statute to mean that, if a court revokes a person's supervised release and orders a term of incarceration, the court may not, in addition, require another term of supervised release. *United States v. Behnezhad,* 907 F.2d 896, 898 (9th Cir.1990). The court in *Behnezhad* reasoned that, because § 3583 was written in the disjunctive and therefore provided separate and distinct alternatives, a court may either revoke the term of supervised release and incarcerate a person or extend or modify the term, but not both. *See id.*

---

1. Petitioner did not receive credit towards his sentence for the period of time during his second parole term in which he did not report to his parole officer; thus, the original November 19 date was extended to July 4, 1994.

The Second, Third, Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits have all agreed with the Ninth Circuit's decision in *Behnezhad;* the First and Eighth Circuits have reached the contrary conclusion. *See United States Parole Comm'n v. Williams,* 54 F.3d 820, 822 (D.C.Cir.1995). Of the courts that have agreed with the Ninth Circuit, some employed a different rationale, focusing on the word, "revoke," in the statute to reach their result. *See, e.g., United States v. Holmes,* 954 F.2d 270 (5th Cir.1992). For example, in *Holmes,* the Fifth Circuit reasoned that the plain meaning of "revoke" was "to cancel or rescind" and that, therefore, once a court had revoked a term of release and replaced it with a prison term, there was nothing left to extend or modify after the prison term ended. *Id.* at 272.

Prior to 1984, 21 U.S.C. § 841(c) required that certain sentences carry with them a "special parole term" to follow the period of incarceration. In place of the special parole term overseen by the USPC, Congress created "supervised release" and made judges responsible for monitoring it. *See* 18 U.S.C. § 3583. Thus, the special parole created under former section 21 U.S.C. § 841 was replaced by the supervised release provisions of 18 U.S.C. § 3853, which were the subject of *Behnezhad* and the other cases discussed above. *See generally Gozlon–Peretz v. United States,* 498 U.S. 395, 399–401, 111 S.Ct. 840, 843–845, 112 L.Ed.2d 919 (1991).

Former § 841(c) provided the USPC's authority to revoke a person's special parole; it read as follows:

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

21 U.S.C.A. § 841(c) (West 1981). Of the courts that have considered the question, the courts of appeals for the Third, Fifth, and

Seventh Circuits have held that the USPC's duty to revoke a person's special parole and require him to spend additional time in prison does not give the USPC authority to impose a new term of special parole to follow the additional prison time. *Fowler v. United States Parole Comm'n,* 94 F.3d 835, 840 (3d Cir.1996); *Evans v. United States Parole Comm'n,* 78 F.3d 262, 264 (7th Cir.1996); *Artuso v. Hall,* 74 F.3d 68, 71 (5th Cir.1996). The courts have reached this conclusion based in part on their earlier decisions holding that 18 U.S.C. § 3583(e) does not permit a court to revoke a person's supervised release and, in addition, require another term of supervised release. The Eighth Circuit and the District of Columbia Circuit have reached the opposite conclusion, holding that the USPC may impose additional terms of special parole to follow a period of incarceration imposed under former 21 U.S.C. § 841(c). *Billis v. United States,* 83 F.3d 209, 211 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 252, 136 L.Ed.2d 179 (1996); *United States Parole Comm'n v. Williams,* 54 F.3d 820, 824 (D.C.Cir.1995). The Ninth Circuit has not issued an opinion on the matter.

## IV.

Petitioner argues that the Ninth Circuit's decision in *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990), that a court may not both revoke a person's supervised release and impose another term of supervised release under 18 U.S.C. § 3583(e), should apply by analogy to the question of whether the USPC may impose an additional term of special parole when it revokes a person's special parole under former 21 U.S.C. § 841(c). The Court disagrees that *Behnezhad* applies here. Although the cases from other circuits reaching the same result as *Behnezhad* on the meaning of § 3583(e) do require a similar result with regard to the meaning of § 841(c), the Ninth Circuit case applied a different analysis in reaching its conclusion, one that does not require a similar conclusion regarding § 841(c).

As Petitioner correctly points out, the Fifth Circuit found that the reasoning in its decision on § 3583(e) controlled its decision

on § 841(c), but the Fifth Circuit's conclusion that § 3583(e) does not allow a court to impose additional supervised release following re-incarceration was based on the court's interpretation of the word, "revoke." *See Artuso v. Hall,* 74 F.3d 68, 71 (5th Cir.1996). Because the word also appeared in former § 841(c), the court had no trouble concluding that it meant the same thing and therefore did not allow additional terms of special parole after the USPC revokes the first. *See id.*

The Ninth Circuit's reasoning in *Behnezhad* is not so easily applied to former § 841(c). The court based its decision in *Behnezhad* on the fact that § 3583(e) offered a district court a list of options written in the disjunctive and therefore only allowed a court to choose either revocation of supervised release and incarceration or modification of the terms of supervised release, but not both. 907 F.2d at 898. The Fifth Circuit was the next to consider the question, and, as already discussed, the court adopted a different rationale and implicitly rejected the reasoning of the Ninth Circuit. *See United States v. Holmes,* 954 F.2d 270, 272 (5th Cir.1992) (agreeing with the Ninth Circuit's result but relying "solely on the plain meaning of the words of the statute," which compelled the court's result "regardless of whether the options available under § 3583(e) could otherwise be used together, or in succession"). Since then, the circuits agreeing with the result in *Holmes* and *Behnezhad* have varied in their reasoning.[2] Petitioner argues that it is significant that the Third, Fifth, and Seventh Circuits, which have held that former § 841(c) does not allow

the USPC to impose additional special parole terms, each also held that § 3853(e) does not allow district courts to impose additional terms of supervised release, suggesting that the Ninth Circuit would follow the same pattern. What is more significant, however, is the fact that the Third, Fifth, and Seventh Circuits based their § 3583(e) decisions on the meaning of the word, "revoke," and either rejected or declined to follow the Ninth Circuit's approach. *See United States v. Malesic,* 18 F.3d 205, 206–07 (3d Cir.1994); *United States v. McGee,* 981 F.2d 271, 274–75 (7th Cir.1992); *Holmes,* 954 F.2d at 272. Thus, the decisions in these circuits say little about how the Ninth Circuit would treat the question.[3]

**V.**

Although Ninth Circuit precedent does not compel a result in the instant case, the reasoning of the Third and Seventh Circuits in determining the meaning of former section 841(c) is persuasive. Meanwhile, the case from the D.C. Circuit and the Eighth Circuit case following it depend on a false dichotomy.

**A.**

After repeating the argument relied upon by the Fifth Circuit that to revoke is to cancel or rescind, the cases from the Third and Seventh Circuits considering the effect of former § 841(c) have proceeded to interpret the plain meaning of the statute. *See Fowler v. United States Parole Comm'n,* 94 F.3d 835, 838–39 (3d Cir.1996); *Evans v. United States Parole Comm'n,* 78 F.3d 262,

---

**2.** Most circuits have agreed with the Fifth Circuit's rationale either without mentioning or without discussing the Ninth Circuit's rationale. *See United States v. Malesic,* 18 F.3d 205, 206–07 (3d Cir.1994); *United States v. Truss,* 4 F.3d 437, 441 (6th Cir.1993); *United States v. McGee,* 981 F.2d 271, 274–75 (7th Cir.1992); *United States v. Koehler,* 973 F.2d 132, 134–35 (2d Cir.1992). Other circuits have approved of both rationales with little analysis. *See United States v. Tatum,* 998 F.2d 893, 894–95 (11th Cir.1993); *United States v. Cooper,* 962 F.2d 339, 341 (4th Cir. 1992). Only one other circuit appears to have preferred the Ninth Circuit's rationale. *See United States v. Rockwell,* 984 F.2d 1112, 1117 (10th Cir.), *cert. denied,* 508 U.S. 966, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993).

**3.** The USPC cites the case of *McQuerry v. United States Parole Comm'n,* 961 F.2d 842 (9th Cir. 1992), in support of its position. The issue in *McQuerry* was whether the USPC had jurisdiction to reopen a case in order to forfeit street time that it had mistakenly credited to the petitioner when it revoked his special parole. *See id.* at 844–45. The USPC had mistakenly revoked parole and credited street time twice, which means that it must have re-released the petitioner on special parole, *id.* at 844, but the court was not directly presented with the question at issue here; nor was an answer to the question necessarily implied be the decision.

264–65 (7th Cir.1996). It is clear that the statute automatically created a new term of imprisonment equal to the term of special parole upon revocation of a person's special parole term and then gave the USPC discretion to require the person to serve either all or part of that new term of imprisonment. The only question remaining is whether, in the situation where a person is required to serve only part of the statutorily mandated new term, the remainder of the term is to be spent on special parole or on regular parole. *Cf. Fowler,* 94 F.3d at 839; *Evans,* 78 F.3d at 265. Because former § 841(c) neither vested the district courts or the USPC with authority to impose additional special parole terms nor operated to impose such terms automatically, "the non-incarcerative custody authorized by § 841(c) [wa]s part of the sentence of imprisonment mandated upon the revocation of special parole; it [wa]s not in addition to it. Thus, it [wa]s traditional parole." *Fowler,* 94 F.3d at 840.

This Court agrees. The effect of former § 814(c) was that it added to a regular prison term—of which a prisoner normally would spend a part in prison and a part on regular parole—a term of parole to follow that would automatically change into an additional prison term when a person violated its conditions. In addition, the allowable prison term was not diminished by the "street time" that the person spent out on special parole before violating its conditions.[4] The statute provided that a person "may be required to serve all or part of the remainder of the new term of imprisonment," but, regardless of how much of the term the USPC chooses to require the person to serve, there is nothing in the statute to suggest that his re-release

should be under the conditions of special parole. Had Congress intended otherwise, it could have included the following as the second-to-last sentence of the provision: "If a person is required to serve only a part of the new term of imprisonment, the person's re-release shall be under a term of special parole equal to the original term minus the time the person is required to spend in prison." Congress did not so provide.

This interpretation is supported by the fact that, as the court in *Evans* pointed out, former § 841(c) controlled any "special parole term imposed under this section," where the section controlled the sentencing done by judges. 78 F.3d at 265. Thus, it was judges, not the USPC, that had the authority to impose special parole terms. The court in *Evans* noted further that former § 841(c) provided that "'the *original* term of imprisonment shall' be increased by the period of the special parole term' (emphasis added). An original 'original' term can be augmented only once; after that, it is not original." *Id.*

Finally, although the Ninth Circuit, in *Behnezhad,* did not employ the rationale that the plain meaning of "revoke" is to "cancel or rescind," the court did not consider, much less reject, the rationale either. Thus, this Court is not precluded from finding that, once a special parole term is revoked, none of it remains to be re-imposed after a term of re-incarceration.[5]

### B.

The cases that have reached the contrary result are not persuasive. In *United States Parole Comm'n v. Williams,* 54 F.3d 820 (D.C.Cir.1995),[6] the D.C. Circuit recognized

---

4. This provision is significant and is the reason why this issue matters at all. If the USPC can impose a prison term of less than the term of special parole without destroying—or while keeping the remainder of—the original special parole term, then, for example, a person could receive a sentence of two years plus four years of special parole, spend a year and a half out on special parole before having his special parole revoked, receive a year's imprisonment, and be re-released to spend another three years on special parole. After two years on special parole for the second time, the person might have his parole revoked again, and, at this point, the USPC would be able to require him to serve a full three

years of incarceration, or less, and so on. *Cf. Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996).

5. The argument against adopting this rationale is that courts interpreting an earlier statute allowing the USPC to revoke a person's parole assumed that the statute allowed the USPC to re-parole the person. *See infra* Part V.C.

6. The Eighth Circuit case of *Billis v. United States,* 83 F.3d 209 (8th Cir.1996), followed *Williams* with little discussion, so the Court will discuss only *Williams* here.

that former § 841(c) mandated a new prison term upon violation of the conditions of special parole but erroneously concluded that, therefore, "the only open issue is whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and special parole," *id.* at 824. As the courts in both *Fowler* and *Evans* have pointed out, *Williams* creates a false dichotomy. *Evans,* 78 F.3d at 265; *Fowler,* 94 F.3d at 839. The dichotomy leaves out a third option, that of serving the term through a combination of incarceration and regular parole. There is nothing in the statute to suggest that Congress intended anything other than this third option, which *Williams* failed to consider.

The court in *Williams* drew support from USPC regulations interpreting former § 841(c). *Id.* Those regulations were promulgated by a specific grant of authority, *see* 18 U.S.C. § 4203 (1982), and provide that a person whose special parole term is revoked will be "subject to re-parole or mandatory release under the Special Parole Term." 28 C.F.R. § 2.57(c). Section 2.57(d) provides that "[i]f a prisoner is re-paroled under the revoked Special Parole Term a certificate of parole to Special Parole Term is issued." As a general rule, when Congress expressly delegates authority to an agency to promulgate regulations, the regulations are to be given "controlling weight." *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). However, this is not the rule when the regulations are "manifestly contrary to the statute." *Id.* at 842–43, 104 S.Ct. at 2781–82. According to the Courts of Appeals for the Third, Fifth, and Seventh Circuits, former § 841(c) is clear, and the USPC regulations contradicting the statute should be given no weight. *Fowler,* 94 F.3d at 841; *Evans,* 78 F.3d at 265; *Artuso v. Hall,* 74 F.3d 68, 71 (5th Cir.1996). If the fact that courts have disagreed over the statute's meaning suggests that the statute is at least ambiguous, this Court is mindful that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985) (internal quotation marks omitted).

The rule of lenity applies to criminal penalties as well as to the substantive scope of criminal laws, *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980), and provides perhaps the strongest reason to reject the reasoning in *Williams.*

### C.

In addition to the arguments raised in *Williams,* the USPC has raised two additional arguments. First, the USPC relies on cases applying former 18 U.S.C. § 4207. The language of former § 4207 was nearly identical to that of former § 841(c), allowing the USPC to revoke a regular parole term and require a person to spend all or part of the remainder of the original sentence in prison. Courts applying § 4207 generally assumed, apparently without considering the issue, that the statute also allowed the USPC to re-parole a person after revoking his parole and requiring him to serve a term of imprisonment. *See, e.g., Gill v. Garrison,* 675 F.2d 599, 600 (4th Cir.1982). The USPC argues that, by analogy, it is clear that § 841(c) should be read to allow re-parole after revoking a special parole term. Like the reasoning in *Williams,* this argument begs the question: what kind of parole is the re-parole? If the language of former § 841(c) was meant to operate just as the identical language in former § 4207, then the re-parole allowed after the USPC orders a person re-incarcerated but does not require him to serve the full term should be regular parole.

Next, the USPC notes that, since *Behnezhad* and the other cases reaching the same conclusion were decided, Congress has amended § 3583 to allow a court to impose a second term of supervised release upon revoking a person's supervised release and requiring him to serve a term of imprisonment. *See* 18 U.S.C. § 3583(h)). Such an amendment should not be considered a correction of the interpretation by the courts of the former statute. *See Fowler,* 94 F.3d at 835. Congress did not do anything effectively to amend former § 841(c); nor did Congress make the amendment to § 3583 retroactive. Absent some indication to the contrary, the

Court should assume that "a legislature says in a statute what it means and means ... what it says." *Id.* (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)) (internal quotation marks omitted).

### VI.

Because former § 841(c) does not authorize the USPC to both revoke a special parole term and impose a second special parole term, Petitioner was improperly placed on special parole when he was last released in March of 1996.[7]  Petitioner's prison term ended on July 4, 1994.  On March 8, 1995, Petitioner was re-incarcerated and the USPC subsequently revoked his special parole.  At that time, a three-year prison term was automatically added onto his original term and the time between his release and his re-incarceration was not counted towards those three years.  The USPC only required Petitioner to serve one year of that term before it released him, and Petitioner should be on regular parole until the end of his prison term on March 7, 1998.

Therefore, Mr. Armstrong's petition for writ of habeas corpus is GRANTED IN PART and DENIED IN PART.  The matter is remanded to the United States Parole Commission for further proceedings consistent with this order.

The Clerk of the Court is directed to send copies of this order to all counsel of record.

---

7. Petitioner's argument that, under *Behnezhad*, the USPC lost jurisdiction over him after they revoked his original, regular parole and required him to serve a prison term is without merit.  Unlike "supervised release" prior to Congress's amendment to § 3583, the form of parole in existence when Petitioner was sentenced subjected a person to USPC jurisdiction until the end of his prison term and thus did allow re-parole after parole was revoked.  *See* 18 U.S.C. §§ 4164, 4210(a), 4214 (1982).