Jay VAN RUSSELL

v.

UNITED STATES PAROLE COMMISSION.

Kent EVANS

v.

UNITED STATES PAROLE COMMISSION.

Nos. 95 C 1508, 95 C 2102.

United States District Court, N.D. Illinois, Eastern Division.

June 13, 1995.

Jay Van Russell, pro se in No. 95 C 1508.

Daniel J. Hessler, Federal Defender Program, Chicago, IL, for petitioner in No. 95 C 2102.

Ann L. Wallace, Asst. U.S. Atty. and James Burns, U.S. Atty., Chicago, IL, for respondent in No. 95 C 1508.

Thomas P. Walsh and Remune Rita Kesius, U.S. Attorney's Office, Chicago, IL, for respondent in No. 95 C 2102.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Van Russell and Evans ask for a writ of habeas corpus. Both were sentenced to prison and to special parole terms; Van Russell for heroin related offenses in Illinois and Kent for marijuana offenses in Georgia.

Both men served their time in prison and were released on special parole and both ran afoul of the terms of release, and the Parole Commission revoked their paroles. All credit for time spent outside prison while on parole was forfeited and the Commission imposed periods of incarceration followed by an additional term of special parole. Neither man argues that the Parole Commission abused its discretion or misapplied its regulation which expressly permits an inmate to be placed back on special parole, 28 C.F.R. § 2.57(c)

The facts of each man's case are different but not in any material respect. A fair statement is that both men have trouble on parole, have parole revoked, spend time in prison, come out on parole, have trouble again and wind up back in prison. I guess (and, on this record, it is only a guess) that both men are drawn to drugs and to a circle of people who use or sell them. As a practical matter, a term of parole holds very little promise for them. It consists of a parole violation followed by revocation, followed by prison and a new parole term. There are some convicts for whom a lengthy prison term without parole is preferable to a shorter term with a long parole. These are defendants who cannot or will not reform themselves, and being on parole just increases their risk of incarceration because they are watched more closely than those not on parole and, if they transgress, the transgression need not be proved beyond a reasonable doubt. It can be said that this is exactly why we have parole, to control chronic offenders with less effort and cost. Whether this is so and if it is wise or fair does not matter much here.[1] Neither side argues fairness or wisdom, they argue

---

**1.** The practice was severely criticized by Judge Sporkin in the *Williams* case, infra, as a remnant of the Dark Ages. I neither condemn nor praise what Judge Sporkin called "yo-yo" sentencing,

but I am quite sure that in the Dark Ages it would have been regarded as ridiculously lenient. *See* William Manchester, A World Lit Only By Fire. (Little, Brown 1994)

the question of the statutory power of the Parole Commission to adopt a regulation which permits imposition of a term of special parole after revocation of an existing term of special parole. The District Court of the District of Columbia said that the Parole Commission did not have such authority. *Williams v. United States Parole Commission,* 860 F.Supp. 1 (D.C.1994). The Court of Appeals disagreed. *United States Parole Commission v. Williams,* 54 F.3d 820 (D.C.Cir.1995). The Seventh Circuit has not ruled on the question so no precedent binds here.

The Parole Commission says the question need not be decided because neither petitioner sought to raise the argument, or any other, before the National Appeals Board.

■ Ordinarily federal prisoners must exhaust administrative remedies. *Sanchez v. Miller,* 792 F.2d 694 (7th Cir.1986). The administrative agency may find facts, apply expertise and, presumably, save the court from doing anything at all by accepting meritorious arguments. The autonomy of the agency is worth something as well. This case fits within a narrow exception to the rule. There are no facts to be found, there is no special expertise in deciding the outer limits of statutory power.[2] The regulation was issued by the agency after the usual review process and the agency is extremely unlikely to decide that the whole thing was a mistake. Indeed, the record shows that the parole examiner thought the matter was one for the courts to decide. The agency to which appeal would be made, the National Appeals Board, is itself about to end its existence so concern for its autonomy is of little consequence. In this rare situation, exhaustion is not required.

The debate centers around a now repealed statute which remains applicable to pre-Guideline cases:

A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances, the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c).

Special parole terms differ from routine parole. It follows completion of the sentence (including routine parole). A violation of special parole converts the term into a new term of imprisonment without credit for time served on parole and it is up to the Parole Commission to decide just how much of the time has to be served in prison. Finally, routine parole is usually incident to a sentence, included by "implication" like good time credit. A special parole term is imposed explicitly by the court and the time of sentence. Kent was given four years special parole term. Van Russell was given fifteen years special parole term.

Special parole terms were a way of stiffening criminal penalties and were often mandated by Congress.

One important word of 21 U.S.C. § 841(c) is "revoked," and an important sentence is "A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment." Nothing is said about imposing a new term of special parole.

In a similar way the statute governing supervised release says a District Court may "revoke a term of supervised release, and require the person to serve in prison all or part of that term of supervised release." 18 U.S.C. § 3583(e)(3).

The Seventh Circuit held under the supervised release statute that revocation means the end of supervised release. If it is revoked, it cannot be extended or imposed anew after the prison term is served, *United States v. McGee,* 981 F.2d 271 (7th Cir.1992). Other Circuits agreed. *United States v. Ko-*

---

**2.** As opposed to the interpretation of its own regulation or its choice among permissible readings of statute to which the agency is owed deference.

*chler,* 973 F.2d 132 (2nd Cir.1992); *United States v. Malesic,* 18 F.3d 205 (3rd Cir.1994); *United States v. Cooper,* 962 F.2d 339 (4th Cir.1992); *United States v. Holmes,* 954 F.2d 270 (5th Cir.1992); *United States v. Truss,* 4 F.3d 437 (6th Cir.1993); *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990); *United States v. Rockwell,* 984 F.2d 1112 (10th Cir.1993). But some did not. *United States v. O'Neil,* 11 F.3d 292 (1st Cir.1993); *United States v. Schrader,* 973 F.2d 623 (8th Cir.1992). Congress did not like the majority rule and changed it, prospectively, by statute.

Petitioners argue that *McGee's* interpretation of the supervised release statute dictates the interpretation of the special parole term statute. The same word and the same phrase in the same context must have the same meaning.

Judge Sporkin thought so in his opinion in *Williams,* and he, unlike me, was not bound to follow *McGee.* The D.C. Circuit has never decided the question about the supervised release statute. He found persuasive the notion that to revoke means to cancel, to rescind, or to annul, and he agreed with the Fifth Circuit that it follows therefrom that once revoked, a term of supervised release is extinguished and there must be legal authority for imposing another sentence of supervised release. As a matter of formal logic I doubt that revoke *necessarily* means permanent extinction, but it may be good legal logic.

Judge Randolph, speaking for the Court of Appeals, thought it was beside the point to rest all on the analysis of the word "revoke." He reasoned that the context of the two statutes was not the same. It is true that both statutes govern what happens to those who violate terms of release after prison. The supervised release statute allows a court to revoke supervised release and impose imprisonment for less than the term of supervised release or end supervised release. The special parole term statute *requires* the Commission to convert the special parole term into a "new term of imprisonment." The question then is not what is the meaning of "revoke" but rather the meaning of "new term of imprisonment."

One could put Judge Randolph's reasoning another way. The pre-Amendment supervised release statute adopts the paradigm of a single criminal sentence of supervised release and then allows a judge to alter that one sentence by doing *one* of five things, ending the supervision, extending the supervision, revoking the supervision, requiring home confinement, or just leaving things as they are. By contrast, the special parole term statute adopts the paradigm of two separate sentences. A violation of the conditions of release revokes the first sentence and requires the creation of a new sentence. The word "revoke" thus means exactly the same thing in both statutes, annulment, cancellation, extinction. The difference between the two is that the special parole term statute requires a "new term of imprisonment" and it is the meaning of that phrase that must be decided.

I am unsure of the validity of this latter analysis. The supervised release statute clearly implies in the case of revocation that, in some sense, a new sentence is imposed, prison for all or part of the period originally allocated to supervised release. The explicit provision of a "new term of imprisonment" in the special parole term statute does not justify, in itself, a major difference in the reading of the statute.

■ The contrast in the structure of the two statutes does, however, justify the conclusion that I am not compelled to read the same words in them in precisely the same way. The supervised release statute provides five ways to deal with a violation, and revocation is just one of them. The special parole term statute provides only two, just leaving things as they are or revocation. It is reasonable to suppose Congress meant to provide a range of options after the Parole Commission decides to do something rather than nothing about a violation. After all, options were provided under the supervised release statute.

■ Historically the power to impose a term of imprisonment carried with it the power to impose a term of parole if only by operation of law. The Parole Commission has imposed terms of special parole as part

of its new "term of imprisonment" for decades without court challenge or Congressional objection. The accepted practice of many years supports the view that the power to impose a "new term of imprisonment" includes the power to impose a new term of special parole. *Cf. United States v. Bridges,* 760 F.2d 151 (7th Cir.1985). Finally, the Parole Commission is empowered to promulgate regulations. 18 U.S.C. § 4203(a)(1) (now repealed but still in force for older cases). Its permissible interpretations are entitled to deference. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). The statute does not expressly preclude new terms of special parole. I am satisfied that a reasonable reading of 21 U.S.C § 841(b) permits imposition of a new term of special parole.

I deny the petitions and I issue certificates of probable cause to appeal.