**UNITED STATES of America**

v.

**Bruce KRAMM.**

**Crim.A. No. 84–384.**

**Civ.A. No. 05–481.**

United States District Court, E.D. Pennsylvania.

April 21, 2005.

Judson A. Aaron, United States Attorney's Office, Philadelphia, PA, for United States of America.

Bruce A. Kramm, Federal Detention Center, Philadelphia, PA, pro se.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Presently before the Court is a motion filed by defendant Bruce Kramm ("Kramm") to correct an illegal sentence pursuant to the version of Federal Rule of Criminal Procedure 35(a) applicable to offenses committed prior to November 1, 1987.[1] For the reasons that follow, the motion will be granted.

### I. PROCEDURAL HISTORY

On September 13, 1984, Kramm pled guilty before the Honorable Edward N. Cahn in Criminal No. 84–384 to one count of possession with intent to distribute marijuana and one count of possession of cocaine. On April 8, 1985, Judge Cahn sentenced Kramm to five years imprisonment,

---

1. The version of Rule 35(a) applicable to offenses committed prior to November 1, 1987 provides that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Fed.R.Crim.P. 35(a) (applicable to offenses committed prior to November 1, 1987).

with six months confinement and four and one-half years probation, to be followed by two years mandatory special parole.

Kramm was again convicted of drug trafficking in September 1988 when he pled guilty before Judge Daniel H. Huyett, III, to one count of distribution of cocaine in the case docketed as Criminal No. 88–370. Stemming from the conviction in Criminal No. 88–370, Judge Cahn found Kramm to be in violation of probation in Criminal No. 84–384 on January 30, 1989. Judge Cahn sentenced Kramm to a total of four and one-half years imprisonment to be followed by a lifetime term of special parole. Specifically, Judge Cahn sentenced Kramm on Count 1 to three and one-half years imprisonment to be followed by a lifetime term of special parole, and on Count 2 to one year imprisonment, to run consecutively to the sentence imposed for Count 1.

Kramm was then sentenced on March 9, 1989 for his underlying conviction in Criminal No. 88–370 to 121 months imprisonment to be followed by eight years of supervised release. This sentence was later reduced by Judge Cahn (presiding for Judge Huyett who was no longer sitting) on November 25, 1997 to 90 months imprisonment. Kramm's resentencing in Criminal No. 88–370 stemmed from the fact that Kramm had not been advised of his right to appeal at the March 9, 1989 sentencing.

Kramm completed his sentence in Criminal No. 84–384 on November 15, 1991. He was released from prison in February 1998 after completing his sentence in Criminal No. 88–370.

On November 4, 2003, Kramm was arrested pursuant to a bench warrant issued in response to the filing of a violation of supervised release petition in Criminal No. 88–370 by the United States Probation Office on October 28, 2003. The petition alleged multiple violations of supervised release including that: (1) Kramm was suspended from mental health counseling with an emphasis on domestic violence due to his continued violation of a protection from abuse order filed by Kimberly Rogacs, (2) Kramm failed to truthfully answer all inquiries of the probation officer by failing to disclose properties owned/maintained as sources of income and all vehicles owned or driven by Kramm, and he repeatedly disobeyed the instructions of his probation officer to cease all contact with Kimberly Rogacs and her family and friends, (3) Kramm failed to notify the probation office within 10 days of a change in residence, (4) Kramm associated with a convicted cocaine dealer without permission, and (5) Kramm was actively engaged in drug trafficking.

On July 30, 2004, this Court dismissed the violation of supervised release petition under Federal Rule of Criminal Procedure 32.1 finding that the eight month delay from the filing of the petition to bringing Kramm before the Court for a violation hearing, during which Kramm was in custody, was unreasonable and without justification. Kramm was released from custody at that time. However, the Court also ordered Kramm not to have any contact with Kimberly Rogacs, Karen Rogacs, and Kirsten Ross–Hilliard.

On November 23, 2004, the United States Probation Office issued a warrant against Kramm in Criminal No. 84–384 based on the same violations alleged in the violation of supervised release petition filed in Criminal No. 88–370. Kramm has been incarcerated since that time.

On December 20, 2004, Kramm, represented by counsel, filed a motion to correct an illegal sentence pursuant to Federal Rule of Criminal Procedure 35(a) and for release on bail while said motion is pending in Criminal No. 84–384 (04–CR–384: doc. no. 63). Kramm filed an amended version of that motion on December 28,

2004 (04–CR–384: doc. no. 64). Kramm filed a second amended motion on March 15, 2005 (04–CR–384: doc. no. 72).

The Court convened a hearing to consider Kramm's Rule 35 motion on March 9, 2005. Thereafter the parties submitted supplemental briefs on issues that arose at the hearing. A second hearing to consider the parties' arguments raised in their supplemental briefs was held on April 13, 2005. At the conclusion of that hearing, the Court granted Kramm's Rule 35 motion and ordered Kramm released from custody (subject to any detainers). This Memorandum provides the Court's rationale for granting Kramm's Rule 35 motion.[2]

## II. DISCUSSION

The version of Rule 35(a) applicable to offenses committed prior to November 1, 1987, and thus applicable in this case, provides that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Fed.R.Crim.P. 35(a) (applicable to offenses committed prior to November 1, 1987). Therefore, Kramm's Rule 35 motion is properly before the Court.

Through his Rule 35 motion, Kramm seeks to have the Court vacate his sentence of lifetime special parole imposed on January 30, 1989 following revocation of his probation in Criminal No. 84–384. Kramm concedes that he was legally brought back for sentencing for the violation and that Judge Cahn properly changed his sentence from six months imprisonment and four and one-half years probation to four and one-half years imprisonment. However, Kramm argues that his sentence was illegally increased when a lifetime term of special parole was added to Count 1.[3]

---

**2.** Kramm also filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 on February 3, 2005, which is currently pending (05–CV–481: doc. no. 1). The Court need not address the issues raised in Kramm's habeas petition since the Court's decision to grant Kramm's Rule 35 motion in Criminal No. 84–384 renders the petition moot.

**3.** Kramm additionally argues that he was never advised of his right to appeal in Criminal No. 84–384 at the original sentencing on April 8, 1985 or at the sentencing for his violation of probation on January 30, 1989. This argument is without merit.

Although the government concedes that Kramm was not advised of his right to appeal at his original sentencing on April 8, 2005, Federal Rule of Criminal Procedure 32(a)(2), in effect at the time, did not require the court to advise Kramm of his right to appeal. Rule 32(a)(2) provided, in pertinent part:

> After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal.... There shall be no duty on the court to advise the defendant of any right of appeal after sentence is

imposed following a plea of guilty or nolo contendere....

Fed.R.Civ.P. 32(a)(2) (1985 rev.). Kramm pled guilty to the charges in Criminal No. 84–384 and therefore Judge Cahn was not required to advise Kramm of his right to appeal following his original sentencing on April 8, 1985.

As for Kramm's argument that he was not advised of his right to appeal following sentencing on January 30, 1989 for his violation of probation, this claim was previously litigated and rejected by Judge Cahn and therefore it cannot be relitigated. The law of the case doctrine provides that "once an issue has been decided, parties may not relitigate that issue in the same case." *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n. 7 (3d Cir.2003) (citing *Waldorf v. Shuta*, 142 F.3d 601, 616 n. 4 (3d Cir.1998)).

Notwithstanding the law of the case doctrine, any failure to advise Kramm of his right to appeal at his violation of probation sentencing on January 30, 1989 is not violative of any law in effect at the time. Federal Rule of Civil Procedure 32.1(a)(2), in effect at the time, listed the rights to which a probationer was entitled at the final revocation hearing.

Kramm's argument has merit. The Supreme Court has previously prohibited increasing a defendant's sentence upon revocation of probation. *Roberts v. United States*, 320 U.S. 264, 272–73, 64 S.Ct. 113, 88 L.Ed. 41 (1943). In *Roberts*, the government argued that upon revocation of probation, a district court could increase the original sentence imposed. *Id.* at 265–66, 64 S.Ct. 113. The government relied upon Section 2 of the Probation Act, legislation in effect at the time, which provided that upon revocation of probation, "the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed." *Id.* at 266 & n. 2, 64 S.Ct. 113 (quoting 18 U.S.C. § 725). Relying on Section 1 of the Probation Act, 18 U.S.C. § 724, to reject the government's argument, the *Roberts* Court highlighted a distinction between the suspension of a sentence imposed before probation is awarded and the suspension of the imposition of a sentence until after probation is revoked:

> Section 1 of the Probation Act provides the procedural plan for release on probation. After judgment of guilt, the trial court is authorized "to suspend the *imposition* or *execution* of sentence and to place the defendant upon probation. . . ." (Italics supplied.) By this language Congress conferred upon the court a choice between imposing sentence before probation is awarded or after probation is revoked. In the first instance the defendant would be sentenced in open court to imprisonment for a definite period; in the second, he would be informed in open court that the imposition of sentence was being postponed. In both instances he then would

be informed of his release on probation upon conditions fixed by the court. The difference in the alternative methods is plain. Under the first, *where execution of sentence is suspended, the defendant leaves the court with knowledge that a fixed sentence for a definite term of imprisonment hangs over him;* under the second, he is made aware that no definite sentence has been imposed and that if his probation is revoked the court will at that time fix the term of his imprisonment. It is at once apparent that if we accept the government's interpretation this express distinction which Section 1 draws between the alternative methods of imposing sentence would be completely obliterated. In the words of the government, any sentence pronounced upon the defendant before his release on probation would be a "dead letter." Thus the express power to suspend execution of sentence granted by Section 1 would, by an inference drawn from Section 2, be reduced to a meaningless formality. No persuasive reasons relating to congressional or administrative policy have been suggested to us which justify construing Section 2 in this manner.

*Id.* at 267–68, 64 S.Ct. 113 (emphasis added).

Therefore, under *Roberts*, if Judge Cahn had suspended imposition of Kramm's sentence it would have been appropriate for Judge Cahn to impose a lifetime term of special parole upon revocation of probation. If, on the other hand, sentence was imposed but execution was suspended, then upon revocation the term of special parole could not be increased.

Notification of the right to appeal was not one of the rights listed. *See United States v. Lawrence*, No. 98–C7563, 1999 WL 409769, at *1 (N.D.Ill. June 8, 1999). Kramm has not pointed to any other law that requires a court to advise a probationer of his right to appeal

following revocation of probation. *Cf. United States v. Allgood*, 48 F.Supp.2d 554, 560 (E.D.Va.1999) (finding that there is no rule, constitutional or otherwise, requiring a court to inform a defendant of a right to appeal the outcome of a probation revocation hearing).

Since the Probation Act was not in effect at the time of Kramm's offense in Criminal No. 84–384, this Court must decide whether the distinction drawn in *Roberts* is applicable in this case. In doing so, the Court must look to the law in effect at the time Kramm committed the offense in Criminal No. 84–384 "[s]ince postrevocation penalties relate to the original offense." *Johnson v. United States,* 529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). The law in effect at the time of Kramm's offense in Criminal No. 84–384 provided:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the *imposition* or *execution* of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

18 U.S.C. § 3651 (emphasis added) *repealed by* Pub.L. 98–473, Title II, §§ 212(a)(1), (2), 235(a)(1), Oct. 12, 1984, 98 Stat. 1987 (effective Nov. 1, 1987). The law governing revocation of probation at the time was embodied in 18 U.S.C. § 3653 and provided as follows:

> As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally been imposed.

18 U.S.C. § 3653, *repealed by* Pub.L. 98–473, Title II, §§ 212(a)(1), (2), 235(a)(1), Oct. 12, 1984, 98 Stat. 1987 (effective Nov.

1, 1987). Notably, the statutory scheme in effect at the time of Kramm's offense draws the same distinction as that drawn by the Probation Act analyzed in *Roberts.* *See United States v. Bynoe,* 562 F.2d 126, 128–29 (1st Cir.1977) (recognizing that under 18 U.S.C. §§ 3651 and 3653, "if imposition of sentence is suspended, the court may, upon revocation of probation, impose any sentence it might originally have imposed, whereas if sentence is imposed and execution suspended, the sentence may not be increased when probation is revoked") (citing *Roberts,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41). Therefore, pursuant to *Roberts,* upon revocation of probation, Judge Cahn was precluded from increasing Kramm's sentence imposed on April 8, 1985.

The further question is whether an increase in a term of special parole is an increase in sentence. The answer to this question is clearly yes. The Supreme Court has equated "parole" to "supervised release." *Johnson,* 529 U.S. at 710–11, 120 S.Ct. 1795 (citing *United States v. Meeks,* 25 F.3d 1117, 1121 (2d Cir.1994) and *United States v. Paskow,* 11 F.3d 873, 881 (9th Cir.1993)). The Third Circuit has made clear that supervised release is punishment in the sense that it is "a deprivation of some portion of one's liberty imposed as a punitive measure for a bad act." *United States v. Gilchrist,* 130 F.3d 1131, 1134 (3d Cir.1997). Therefore, because a sentence is defined as "the punishment imposed on a criminal wrongdoer," Black's Law Dictionary 1097 (7th ed.1999), supervised release constitutes part of a sentence. Since parole is comparable to supervised release it follows that parole constitutes part of a sentence.

Therefore, an increase in a term of parole, or special parole, is an increase in sentence precluded by *Roberts.*[4] The government, after conferring with parole au-

---

4. Notably the Supreme Court has held that it is permissible to impose a new term of parole, or special parole, following a prison sentence

thorities, conceded as much in its supplemental brief and at the April 13, 2005 hearing. The government noted that Judge Cahn did not suspend the imposition of special parole at Kramm's April 8, 1985 sentencing but instead imposed a two-year term of special parole. The government therefore concedes that all Judge Cahn was permitted to do upon revocation of probation was to continue the two-year term of special parole following Kramm's

completion of his four and one-half year sentence of incarceration. According to the government, while the increase to a lifetime term did not offend double jeopardy, it was contrary to the language of the statute in effect at the time of Kramm's sentencing.[5]

## III. CONCLUSION

For the foregoing reasons, the Court finds that Kramm's sentence was unlawful-

---

imposed after revocation of an initial parole term. *Johnson,* 529 U.S. at 711, 120 S.Ct. 1795 (citing *U.S. Parole Comm'n v. Williams,* 54 F.3d 820, 824 (D.C.Cir.1995); *United States v. O'Neil,* 11 F.3d 292 (1st Cir.1993); 28 C.F.R. § 2.52(b) (1999)). The instant matter, however, is distinguishable from the circumstance discussed in *Johnson* because the increase of Kramm's term of special parole from a two year term to a lifetime term followed revocation of probation, which is an alternative to imprisonment, *Id.* at 711 n. 11, 120 S.Ct. 1795, not revocation of his initial parole term. Thus, the key principle of *Roberts,* that a sentence may not be increased when probation is revoked, remains applicable in this case.

**5.** Kramm raised other arguments in support of his position that his special parole term was illegally increased. Specifically, Kramm cited *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990), *abrogated by Johnson v. United States,* 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), for the proposition that upon revocation of probation, a court is permitted to impose a sentence of imprisonment or to continue supervision, but not both. In *Behnezhad,* the district court had revoked the defendant's release and ordered him to be returned to prison for ten months to be followed by twenty-four more months of supervised release. *Id.* at 897. The Ninth Circuit, interpreting 18 U.S.C. § 3583, the statute governing revocation of supervised release, held that a district court may either revoke the term of supervised release and incarcerate the person or may modify both the length and terms of supervised release. *Id.* at 898. According to the Ninth Circuit, however, a district court could not revoke a person's supervised release, order a term of incarceration and then order another term of supervised release. *Id.*

The Ninth Circuit's position in *Behnezhad* was expressly rejected by the Supreme Court in *Johnson,* 529 U.S. at 713, 120 S.Ct. 1795. In *Johnson,* the Court interpreted a version of the supervised release statute that did not contain an amendment added in 1994 explicitly giving district courts power to impose another term of supervised release following imprisonment. *Id.* at 698, 702–03, 120 S.Ct. 1795. The Court found that the more plausible reading of the pre–1994 statute left open the possibility of supervised release after reincarceration. *Id.* at 713, 120 S.Ct. 1795. Therefore, to the extent Kramm relies on *Behnezhad* for the proposition that Judge Cahn had no authority to impose incarceration and an increased term of special parole, Kramm's argument is misguided.

Kramm also cited *United States v. Gozlon–Peretz,* 894 F.2d 1402, 1405 (3d Cir.1990) and *Gozlon–Peretz v. United States,* 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991), for the proposition that special parole was no longer available as a sentence when the violation and/or criminal conduct occurred subsequent to October 12, 1986. Kramm's violation of probation occurred on January 22, 1988 and therefore Kramm argues that special parole was not an available option for his sentence. To the contrary, because special parole was available in 1983 when Kramm committed the drug offense for which he was convicted in Criminal No. 84–384, Judge Cahn was able to impose special parole at the 1989 revocation hearing, *United States v. Caraballo,* Nos. 96 CIV. 6915, 86 CR. 336, 2000 WL 48878, at *1 n. 1 (S.D.N.Y.2000) ("Although [special parole] was repealed in 1984 by the Sentencing Reform Act of 1984, it still governs convictions for offenses committed before November 1, 1987.") (citing *Strong v. U.S. Parole Comm'n,* 141 F.3d 429, 430–31 (2d Cir. 1998)), but only insofar as such imposition did not violate the holding in *Roberts.*

ly increased in Criminal No. 84–384 when his special parole term was increased from two years to lifetime following revocation of probation on January 30, 1989. Hence, Kramm's motion to correct an illegal sentence pursuant to Rule 35(a) is granted. This has the effect of reinstating Kramm's initial sentence imposed on April 8, 1985 that included a two year term of special parole. Because the two year term of special parole would have expired in March of 2000 at the latest (two years after Kramm's release in Criminal No. 88–370), Kramm shall be deemed to have completed his term of special parole in Criminal No. 84–384.

An appropriate Order follows.

## ORDER

**AND NOW,** this **21st day** of **April 2005,** it is hereby **ORDERED** that:

1. The defendant's motion to correct an illegal sentence pursuant to Federal Rule of Criminal Procedure 35(a) (84–CR–384: doc. no. 63), as amended (84–CR–384: doc. no 64 and doc. no. 72), is **GRANTED;** and

2. The defendant's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (05–CV–481: doc. no. 1) is **DENIED AS MOOT.**

**AND IT IS SO ORDERED.**